1  DANIEL G. KNAUSS
   United States Attorney
2  District of Arizona

3  ROBERT LONG
   Assistant U.S. Attorney
   Two Renaissance Square
4  40 N. Central Avenue, Suite 1200
   Phoenix, Arizona 85004-4408
   Arizona State Bar No. 019180
5  Telephone (602) 514-7500
   E-Mail: robert.long@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Farm Fresh Meats, Inc.,<br><br>　　　　　Defendant. | CR 07-160-02-PHX EHC<br><br>**PLEA AGREEMENT** |

Plaintiff, United States of America, and defendant, Farm Fresh Meats, Inc., hereby agree to the following disposition of this matter:

**PLEA**

Defendant will plead guilty to the Information charging defendant with: (1) a violation of Title 18, United States Code, Section 641, Theft of Government Money or Property, a Class C felony, as defined by Title 18, United States Code, Section 3559; (2) a violation of Title 18, United States Code, Section 1341, Mail Fraud, a Class C felony, as defined by Title 18, United States Code, Section 3559; and (3) a violation of Title 18, United States Code, Section 1343, Wire Fraud, a Class C felony, as defined by Title 18, United States Code, Section 3559.

**TERMS**

Defendant understands that the Court is required to consider the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") among other factors in determining defendant's sentence. Defendant understands, however, that the Sentencing Guidelines are only advisory, and that after considering the Sentencing Guidelines, the Court may be free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crimes of conviction.

1. **MAXIMUM PENALTIES**

    a.  A violation of Title 18, United States Code, Section 641, Theft of Government Money or Property (with a value exceeding $1000.00), is punishable by a maximum fine of $500,000.00 (or the applicable amount under Title 18, United States Code, Section 3571(d)) or a maximum term of 5 years probation.

    b.  A violation of Title 18, United States Code, Section 1341, Mail Fraud, is punishable by a maximum fine of $500,000.00 (or the applicable amount under Title 18, United States Code, Section 3571(d)) or a maximum term of 5 years probation.

    c.  A violation of Title 18, United States Code, Section 1343, Wire Fraud, is punishable by a maximum fine of $500,000.00 (or the applicable amount under Title 18, United States Code, Section 3571(d)) or a maximum term of 5 years probation.

    d.  Because defendant has pled guilty to three counts, defendant faces a maximum statutory fine of $1,500,000.00 (or the applicable amount under Title 18, United States Code, Section 3571(d)).

    e.  According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall:

    (1) Order defendant to make restitution to any victim of the offenses unless, pursuant to Title 18, United States Code, Section 3663, the Court determines that restitution would not be appropriate in this case.

    (2) Order defendant to pay a fine, which may include the costs of probation, supervised release or incarceration, unless, pursuant to Title 18, United States Code, Section 3611, defendant establishes the applicability of the exceptions found therein.

    f.  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a special assessment on defendant of $1,200.00 ($400.00 per offense). The special assessment is due at the time defendant enters the pleas of guilty, but in no event shall it be paid later than the time of sentencing.

2. **AGREEMENTS REGARDING SENTENCING**

   a. <u>Stipulated Fine</u>  Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and defendant stipulate that defendant shall pay a fine of $100,000.00.

   b. <u>Agreement to Cease and Desist</u>  Defendant agrees that within 90 days of entering its guilty pleas, it will permanently cease and desist from (1) engaging in the business of owning or operating a meat processing facility or slaughterhouse; and (2) bidding for or participating in (directly or indirectly) any United States Department of Agriculture (USDA) program, or program operated by any of the USDA's sub-agencies or offices.

   c. <u>Agreement to Pay Restitution</u>  Defendant specifically agrees to make restitution in the amount of $390,000 to the United States resulting from its theft of government funds, mail fraud and wire fraud. Defendant and Roland Emerson Farabee shall be jointly and severally liable for the $390,000.

   d. <u>The Court Can Reject the Plea Agreement</u>  If the Court, after reviewing this plea agreement, concludes that any provision is inappropriate, it may reject the plea agreement, giving defendant, in accordance with Fed. R. Crim. P. 11(c)(5), an opportunity to withdraw the guilty pleas.

   e. <u>Statements to Probation Office and The Court</u>  The United States retains the unrestricted right to make any and all statements it deems appropriate to the Probation Office and to make factual and legal responses to any statements made by defendant or defense counsel or objections to the presentence report or to questions by the Court at the time of sentencing.

   f. <u>Criminal History Options</u>  This plea agreement is expressly conditioned upon the accuracy of defendant's criminal history as known by the government at the time of the guilty pleas. It is the government's understanding that defendant has no criminal convictions. The discovery of any criminal convictions shall entitle the government to withdraw from this agreement.

3. **WAIVER OF DEFENSES AND APPEAL RIGHTS**

   Defendant waives any and all motions, defenses, probable cause determinations, and objections which defendant could assert to the indictment or information or to the Court's entry

of judgment against defendant and imposition of sentence upon defendant, providing the sentence is consistent with this agreement. Defendant further waives: (1) any right to appeal the Court's entry of judgment against defendant; (2) any right to appeal the imposition of sentence upon defendant under Title 18, United States Code, Section 3742 (sentence appeals); and (3) any right to collaterally attack defendant's conviction and sentence under Title 28, United States Code, Section 2255, or any other collateral attack. Defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack defendant might file challenging its conviction or sentence in this case.

**4.    PERJURY AND OTHER FALSE STATEMENT OFFENSES OR OTHER OFFENSES**

Nothing in this agreement shall be construed to protect defendant in any way from prosecution for perjury, false declaration or false statement, or any other offense committed by defendant after the date of this agreement. Any information, statements, documents, and evidence which defendant provides to the United States pursuant to this agreement may be used against defendant in all such prosecutions.

**5.    REINSTITUTION OF PROSECUTION**

If defendant's guilty pleas are rejected, withdrawn, vacated, or reversed at any time, the United States will be free to prosecute defendant for all charges of which it has knowledge, and any charges that have been dismissed because of this plea agreement will be automatically reinstated. In such event, defendant waives any objections, motions, or defenses based upon the Statute of Limitations, the Speedy Trial Act or constitutional restrictions in bringing of the later charges or proceedings. Defendant understands that any statements made at the time of defendant's change of plea or sentencing may be used against defendant in any subsequent hearing, trial or proceeding as permitted by Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410.

**6.    DISCLOSURE OF INFORMATION TO U.S. PROBATION OFFICE**

a.    Defendant will cooperate fully with the U.S. Probation Office. Such cooperation will include truthful statements in response to any questions posed by the Probation Office, including, but not limited to:

1          (1)    All criminal history information, i.e., all criminal convictions as defined under the Sentencing Guidelines.

        (2)    All financial information, e.g., present financial assets or liabilities that relate to the ability of defendant to pay a fine or restitution.

        (3)    All history of drug abuse which would warrant a treatment condition as part of sentencing.

        (4)    All history of mental illness or conditions which would warrant a treatment condition as a part of sentencing.

**7.   FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

a.    Nothing in this agreement shall be construed to protect defendant from civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture.

b.    Defendant will identify all assets and identify the source of income used to obtain the assets. Defendant will identify all assets used to facilitate the commission of any crime charged in this information. Defendant will testify truthfully in any civil forfeiture proceeding.

c.    Further, this agreement does not preclude the United States from instituting any civil or administrative proceedings as may be appropriate now or in the future.

**ELEMENTS AND FACTUAL BASIS**

**ELEMENTS**

I, FFMI, further agree that if this matter were to proceed to trial, the United States could prove I committed Theft of Government Funds, Mail Fraud, and Wire Fraud within the District of Arizona during the times specified in the Information. Specifically, I agree that at trial, the United States could prove the the following elements of the crime beyond a reasonable doubt:

**Theft of Government Money or Property, Title 18, United States Code, Section 641**

1. Defendant knowingly stole money with the intention of depriving the owner of the use or benefit of the money;

2. The money belonged to the United States; and

5

3. The value of the money was more than $1000.00.

**Mail Fraud, Title 18, United States Code, Section 1341**

1 Defendant made up a scheme for obtaining money or property by making false promises or statements;

2 Defendant knew the promises or statements were false;

3 The promises or statements were material, that is they would reasonably influence a person to part with money or property;

4. Defendant acted with intent to defraud; and

5. Defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.

**Wire Fraud, Title 18, United States Code, Section 1343**

1 Defendant made up a scheme for obtaining money or property by making false promises or statements;

2 Defendant knew the promises or statements were false;

3 The promises or statements were material, that is they would reasonably influence a person to part with money or property;

4. Defendant acted with intent to defraud; and

5. Defendant used, or caused to be used, wire, radio or television communications in interstate or foreign commerce to carry out or attempt to carry out an essential part of the scheme.

**FACTUAL BASIS**

I, FFMI, further admit that if this matter were to proceed to trial, the United States could prove the following facts beyond a reasonable doubt:

FFMI is a meat processing facility in Maricopa, Arizona. On June 7, 2004, FFMI, by and through its representatives and agents, entered an agreement with the USDA (USDA Agreement). The USDA Agreement related to the USDA's surveillance program for Bovine Spongiform Encephalopathy (BSE), more commonly known as "mad cow disease." The BSE surveillance program covered cattle within a "Targeted Cattle Population." At the time FFMI

signed the USDA Agreement, on June 7, 2004, FFMI representatives and agents understood that the Targeted Cattle Population consisted of the following cattle:

- Cattle over 30 months of age (except animals of any age that show signs of Central Nervous System (CNS) signs and/or rabies negative);
- Non-ambulatory cattle;
- Cattle exhibiting signs of central nervous system disorder;
- Cattle exhibiting other signs that may be associated with BSE, such as emaciation or injury; and
- Dead cattle.

The USDA Agreement provided that FFMI, and its representatives and agents, would: (a) collect obex samples from cattle *within* the Targeted Cattle Population, package the obex samples, and transport or ship the obex samples to the designated USDA mad cow disease testing laboratory; (b) accurately complete data forms accompanying packages containing obex samples, and provide and maintain documentation identifying the origin of each animal from which a sample was collected and its clinical condition; and (c) store cattle carcasses and heads pending test results in a refrigerated facility.

The USDA Agreement also provided that the USDA would pay FFMI $150.00 per obex sample collected from a cow or bull *within* the Targeted Cattle Population. At the time the USDA Agreement was entered, FFMI, and its representatives and agents, understood that the USDA would not pay FFMI for samples collected from cattle *outside* the Targeted Cattle Population. FFMI, and its representatives and agents, also understood that the USDA was not obligated to pay for obex samples collected from cattle *within* the Targeted Cattle Population if the obex samples were not properly collected, packaged, documented or if the carcasses were not handled, stored or disposed of in a manner consistent with federal and state guidelines.

### Theft of Government Money

Between August 2004 and July 2006, in the District of Arizona, FFMI, by and through its representatives and agents, knowingly stole $390,000 from the United States. FFMI, by and through its representatives and agents, knowingly stole the money by collecting and submitting

to the USDA laboratory, obex samples from cattle *outside* the Targeted Cattle Population; and falsely representing that those obex samples came from cattle *within* the Targeted Cattle Population, in order to receive money from the United States. FFMI's representatives and agents, acting on FFMI's behalf, intended to permanently deprive the United States of the use and benefit of the money.

### The Scheme to Defraud

To defraud the United States, FFMI, by and through its representatives and agents, devised and executed the following scheme. FFMI, by and through its representatives and agents: (a) knowingly collected, and caused to be collected, obex samples from cattle *outside* the Targeted Cattle Population, and not subject to payment by the USDA; (b) knowingly caused to be submitted, payment requests to the USDA based on obex samples that were not subject to payment under the USDA Agreement; (c) knowingly completed and submitted, and caused to be completed and submitted, BSE Surveillance Data Collection Forms (Collection Forms) to the USDA's testing laboratory that were false and misleading; (d) knowingly completed and submitted, and caused to be completed and submitted, BSE Surveillance Submission Forms (Submission Forms) filed with the USDA that were false and misleading; (e) knowingly falsified, and caused others to falsify, internal FFMI documents to conceal the fact that FFMI and its representatives and agents were seeking and obtaining payment from the USDA for obex samples obtained from cattle *outside* the Targeted Cattle Population; and (f) knowingly failed to comply with, and caused others to fail to comply with, the USDA Agreement by discarding cattle carcasses and heads prior to receiving BSE test results.

In connection with the scheme, FFMI, by and through its representatives and agents, knowingly and willfully made materially false statements to the USDA regarding the origin of obex samples and compliance with the USDA Agreement. FFMI's representatives and agents, acting on behalf of FFMI, made the materially false statements with the intent of defrauding the United States.

<u>Use of Mails</u>

Between August 2004 and July 2006, in the District of Arizona, FFMI, by and through its representatives and agents, knowingly and willfully devised and executed a scheme for obtaining money from the United States by making false statements. For the purpose of executing the scheme, FFMI, by and through its representatives and agents, sent and caused to be sent, via Federal Express, obex samples from cattle *outside* the Targeted Cattle Population to the USDA's testing laboratory in California. FFMI, by and through its representatives and agents, also knowingly and willfully completed and submitted, and caused to be completed and submitted, via Federal Express, materially false Collection Forms to the USDA's testing laboratory in California. The Collection Forms falsely identified obex samples as coming from dead, downer or diseased cattle when in fact the cattle were healthy, disease free and, in some cases, had already been processed and shipped by FFMI  FFMI, by and through its representatives and agents, intentionally included false information in the Collection Forms submitted to the USDA's testing laboratory.

<u>Use of Wires</u>

Between August 2004 and July 2006, in the District of Arizona, FFMI, by and through its representatives and agents, knowingly and willfully devised and executed a scheme for obtaining money from the United States by making false statements. For the purpose of executing the scheme, FFMI, by and through its representatives and agents, transmitted, and caused to be transmitted, Submission Forms to the USDA, via wire transmissions, which included false information relating to cattle *outside* the Targeted Cattle Population. The wire transmissions traveled from Arizona to a USDA website hosted on a server in Ft. Collins, Colorado. FFMI's representatives and agents, acting on behalf of FFMI, intentionally included false information in the Submission Forms transmitted to the USDA.

<u>I Swear to the Accuracy of My Statements</u>

I understand that I will have to swear under oath to the accuracy of these statements, and if I should be called upon to testify about this matter in the future, any intentional material

inconsistencies in my testimony may subject me to additional penalties of perjury or false swearing which may be enforced by the United States under this plea agreement.

## DEFENDANT'S APPROVAL AND ACCEPTANCE

I have read each of the provisions of the entire plea agreement with the assistance of counsel and understand its provisions.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my pleas of guilty I will be giving up my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination -- all with the assistance of counsel -- and to be presumed innocent until proven guilty beyond a reasonable doubt.

Information/Waiver of Indictment   I understand that I have a right to have the charges prosecuted by an indictment returned by a concurrence of 12 or more members of a legally constituted grand jury consisting of not less than 16 and not more than 23 members. By signing this agreement, I knowingly waive my right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that I have been prosecuted by way of information.

I agree to enter my guilty pleas as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty pleas. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence will be determined after consideration of the advisory Sentencing Guidelines. I understand that the Guideline Range referred to herein or discussed with my attorney is not binding on the Court and is merely an estimate. I further understand that under certain limited circumstances the Court may depart upward or downward from the calculated guideline range.

My guilty pleas are not the result of force, threats, assurances or promises other than the promises contained in this agreement. I agree to the provisions of this agreement as a voluntary

act on my part, rather than at the direction of or because of the recommendation of any other person, and I agree to be bound according to its provisions.

I fully understand that, if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that, if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to pay additional fines or my sentence may otherwise be altered.

I agree that this written plea agreement contains all the terms and conditions of my pleas and that promises made by anyone (including my attorney), and specifically any predictions as to the guideline range applicable, that are not contained within this <u>written</u> plea agreement are without force and effect and are null and void.

I am satisfied that my defense attorney has represented me in a competent manner.

I am fully capable of understanding the terms and conditions of this plea agreement. I am not now on or under the influence of any drug, medication, liquor, or other intoxicant or depressant, which would impair my ability to fully understand the terms and conditions of this plea agreement.

2-13-07
Date

FARM FRESH MEATS, INC.
Defendant
By: Roland Emerson Farabee, President

### DEFENSE ATTORNEY'S APPROVAL

I have discussed this case and the plea agreement with my client, in detail and have advised defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty pleas will be entered, possible defenses, and the consequences of the guilty pleas including the maximum statutory sentence possible. I have further discussed the concept of the advisory sentencing guideline with defendant. No assurances, promises, or representations have been

given to me or to defendant by the United States or by any of its representatives which are not contained in this written agreement. I concur in the entry of the pleas as indicated above and on the terms and conditions set forth in this agreement as in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty pleas are entered in accordance with all the requirements of Fed. R. Crim. P. 11.

2/13/07
Date

*[signature]*
A. MELVIN MCDONALD, JR.
Attorney for Defendant FFMI

### UNITED STATES' APPROVAL

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth are appropriate and are in the best interests of justice.

DANIEL G. KNAUSS
United States Attorney
District of Arizona

2/13/07
Date

*[signature]*
ROBERT LONG
Assistant U.S. Attorney

### COURT'S ACCEPTANCE

9-21-07
Date

*[signature]*
EARL H. CARROLL
United States District Judge